```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF VERMONT


DANNY LEE WIRASNIK,                  :
                                     :
        Plaintiff,                   :
                                     :
                v.                   :   File No. 1:10-cv-113-jgm
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of Social Security,     :
                                     :
        Defendant.                   :
_____    :
```

                        DECISION AND ORDER
            ON PARTIES' RESPECTIVE MOTIONS TO EITHER
            REVERSE OR AFFIRM THE COMMISSIONER'S DECISION
                           (Docs. 9, 12)

   Plaintiff disability claimant Danny Lee Wirasnik moves under 42 U.S.C. § 405(g) and Local Rule 9(a)(2)(A) to reverse the Commissioner's decision denying him Social Security Disability Insurance benefits.  (Doc. 9.)  Defendant Michael J. Astrue, Commissioner of Social Security, moves for judgment affirming the decision.  (Doc. 12.)  For the reasons that follow, the Commissioner's motion to affirm the decision is granted.

I.   BACKGROUND

   On August 10, 2007, Wirasnik filed for Social Security Disability Insurance benefits ("DIB"), asserting he has been disabled since May 6, 2005 because of lower back problems.  (R. at 9, 112-13.)  His application was denied on December 6, 2007 at the initial level of review, and denied again on September 16, 2008 by a Federal Reviewing Official.  (R. at 9, 44.)  On December 7, 2009, Administrative Law Judge ("ALJ")

Thomas Merrill held a hearing where Wirasnik appeared with counsel and testified, as did a vocational expert.  (R. at 70, 16-41.)

On December 18, 2009, the ALJ held Wirasnik was not disabled and not entitled to DIB.  (ALJ Decision, R. at 6-15.)  At step one of the five-step sequential evaluation process for determining disability under the Social Security Act, see 20 C.F.R. § 404.1520(a)(4), the ALJ found Wirasnik had not engaged in substantial gainful activity since his May 6, 2005 onset date.  (R. at 11.)  At step two, the ALJ determined Wirasnik's degenerative disc disease of the lumbar spine and his obesity were severe impairments that met the durational requirement for an impairment, according to 20 C.F.R. § 404.1509.  (R. at 12.)  The ALJ determined, however, that the records regarding Wirasnik's diagnosed depression did not show it would interfere with his ability to perform basic work functions for any twelve-month period and that this was not a severe impairment.  Id.

At step three, the ALJ determined Wirasnik did not have an impairment or combination of impairments that met or medically equaled one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 12 (noting Wirasnik's impairments did not meet Listing 1.04 regarding disability caused by disorders of the spine).)  Relying on records from Wirasnik's treating physician, Dr. Block, of November 2006, February 2008, and October 2008, the

ALJ concluded Wirasnik had consistent, maintained, normal reflex and sensory function, with "evidence of only very mild weakness of the EHL." (R. at 12; see also R. at 234.) The ALJ evaluated and discounted Dr. Block's October 29, 2009 opinion, generated in response to questioning by Wirasnik's attorney, on grounds it was not supported by the doctor's own clinical observations. (R. at 12.) Other physician records reflected Wirasnik had no spinal tenderness, maintained good range of spinal motion with minimal discomfort, and full straight-leg raising. Id. In October 2008, Wirasnik had normal gait, strength and sensation, and intact reflexes. Id. The ALJ at this step also considered the effects of Wirasnik's obesity, under SSR 02-1P, and determined the obesity did not support a finding that Wirasnik's impairments met or medically equaled a listing. Id.

At step four, the ALJ found Wirasnik had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that Wirasnik needed to alternate between sitting, standing, and walking for five minutes every two hours. Id. Given this residual functional capacity, the ALJ concluded Wirasnik was capable of performing his past relevant work as a truck driver. Id. at 14.

In evaluating Wirasnik's claimed symptoms, the ALJ held that while Wirasnik's impairments could reasonably be expected to produce the claimed pain or symptoms, his statements regarding

the intensity, persistence and limiting effects of his impairments were not credible to the extent they were inconsistent with the evidence underlying the ALJ's assessment that Wirasnik had the residual functional capacity to perform light work.  Id. at 13.

For instance, although Wirasnik made statements that he had incapacitating pain, a June 2006 record by Dr. Block indicated back symptoms were relieved by a facet injection.  See Ex. 4F at 17 (R. at 244).  Despite a September 2006 flare-up of symptoms, Dr. Block noted Wirasnik was doing light-duty work during the flare-up, and in November 2006, could do so "without much difficulty."  Id. at 7, 13 (R. at 234, 240).  In May 2007, he could drive to North Carolina and back without major difficulty and did not require medication.  Id. at 5 (R. at 232).  In contrast to Wirasnik's testimony that he was limited to walking a quarter mile, he reported to Dr. Brown in September 2009 that he was able to walk a mile.  See Ex. 14F at 6 (R. at 353).  In addition, the ALJ noted Wirasnik was working part-time for much of the period at issue.  (R. at 14.)

The ALJ considered both Dr. Lyon's and Dr. Block's opinions, and afforded only "limited weight" to Dr. Lyon's October 2009 opinion (R. at 371), and Dr. Block's October 2009 opinion (R. at 364) which concluded Wirasnik could not work.  (R. at 14.)  The ALJ found Dr. Lyon's October 2009 opinion was internally

inconsistent, where his answer to a compound question posed by Wirasnik's attorney was ambiguous and offered no clinical observations to support an opinion that claimant had depression with markedly restricted daily living activities and deficiencies of concentration.  Id.  Dr. Block's October 2009 opinion differed from his earlier opinions for unexplained reasons, and the doctor's finding that Wirasnik exhibited signs described in Listing 1.04 was inconsistent with Dr. Block's own clinic records.  Id.

Furthermore, while the ALJ held Wirasnik could perform his past relevant work, he also noted the vocational expert had identified a significant number of other jobs Wirasnik could perform as well.  (R. at 15.)

The ALJ's decision became final on March 18, 2010, when the Decision Review Board affirmed it.  (R. at 1-3.)

II. DISCUSSION

Wirasnik asserts the following errors: first, the ALJ improperly applied the treating physician rule; second, the ALJ failed to consider all the evidence in rendering his decision; third, he failed to consider the effect of Wirasnik's obesity; fourth, he failed to properly assess Wirasnik's pain and its impact on Wirasnik's ability to work at substantially gainful activity levels; and finally, his hypothetical questions to the

vocational expert were improperly based on the assumption Wirasnik could do light work.

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the Commissioner's factual findings, and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 390, 401 (1971).  A reviewing court does not consider the question of disability de novo.  Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).

> A. The Treating Physician Rule and the ALJ's Consideration of All the Evidence

Wirasnik asserts the ALJ violated the treating physician rule, see 20 C.F.R. § 404.1527(d)(2), in disregarding Dr. Lyon's October 2009 finding that Wirasnik had six depression symptoms found in Listing 12.04(A)(1), and in disregarding Dr. Block's most recent October 2009 medical report which concluded Wirasnik was not capable of substantial gainful employment.  (Doc. 9-1 at 3-4.)  The ALJ's decision not to afford controlling weight to these opinions is also the basis for Wirasnik's argument the ALJ failed to consider all the evidence in rendering his opinion.

A physician's opinion is given controlling weight when the opinion is: (1) from a treating source; (2) concerns the nature and severity of the claimant's impairment; and (3) is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  SSR 96-2p.  Even if an opinion is well

6

supported by medical evidence, an ALJ will not assign it controlling weight if it is inconsistent with other substantial evidence in the administrative record.  Id.; Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  If an opinion is not assigned controlling weight, the ALJ must consider the examining relationship, the treatment relationship, the opinion's supportability and consistency, the physician's specialization, and other factors, in determining what weight to give the opinion.  20 C.F.R. § 404.1527(d)(2).

Here, the ALJ did not err in declining to give Dr. Lyon's October 29, 2009 physician's report, in which he stated Wirasnik experienced six symptoms of depression (R. at 371-75), controlling weight on grounds Dr. Lyon failed to offer any clinical observations in support of his opinion.  (R. at 14.) Both SSR 96-2p and 20 C.F.R. § 404.1527(d) provide that an unsupported treating physician opinion will not be given controlling weight, and therefore the ALJ properly gave Dr. Lyon's opinion only limited weight.  The Commissioner also points out that Dr. Lyon's October 2009 report is an unexplained departure from his conclusions just a few months earlier, in June and August 2009, that Wirasnik's depression had improved.  (R. at 382; R. at 389-90.)

Furthermore, the ALJ did not err in declining to give controlling weight to Dr. Block's October 29, 2009 physician's

report, in which he stated Wirasnik was not capable of substantial gainful activity, on grounds Dr. Block's October 2009 opinion was inconsistent with the doctor's own clinical records, and therefore entitled only to limited weight. (R. at 14 (comparing Dr. Block's three opinions (R. at 328, 343 and 364), noting unexplained inconsistencies between them and lack of clinical support for the October report's conclusion Wirasnik had signs described in Listing 1.04).)

The ALJ also properly concluded Wirasnik's impairments did not meet or equal Listing Section 1.04 on grounds the record demonstrated normal reflex and sensory function, with only mild weakness of the EHL in November 2006, and, in February 2008, no spinal tenderness, good spinal range of motion with minimal discomfort at the extremes, and full straight-leg raising. (R. at 12 (citing R. at 234, 351).) In October of 2008, although Wirasnik had re-activated his sciatic, he had normal gait, strength, and sensation, with intact reflexes. Id. (citing R. at 356). As noted supra, the ALJ assigned less weight to Block's October 2009 opinion because it was not supported by clinical observations. (R. at 12.) The ALJ's conclusion at this step is supported by substantial evidence in the record.

Therefore, the ALJ's decision to afford limited weight to Dr. Lyon's and Dr. Block's October 2009 physician reports is supported by substantial evidence, and does not violate the

treating physician rule, or constitute a failure to consider all the evidence in rendering a decision.

    B.   <u>Consideration of Obesity</u>

Wirasnik asserts the ALJ failed to consider his obesity in evaluating his exertional abilities and the persistence necessary to maintain substantial gainful activity.  (Doc. 9-1 at 6.)

According to SSR 02-1p, obesity will be considered in determining whether a claimant has a medically determinable impairment, whether the impairment is severe and meets or equals a listed impairment, and whether an impairment prevents performance of past relevant work or other work in the national economy.  <u>See</u> SSR 02-1p at ¶ 3.

Here, the ALJ at step two found Wirasnik's obesity was a severe impairment.  (R. at 11.)  He considered the obesity's effect on Wirasnik's musculoskeletal impairment at step three, determining there was no evidence of abnormal motor, sensory, or reflex function under Listing 1.04, despite the obesity.  (R. at 12.)  At step four, the ALJ also determined that, "[e]ven when the claimaint's obesity is considered," Wirasnik was able to remain active and lose weight, and retained residual functional capacity.  (R. at 14.)  Therefore, the ALJ properly considered obesity at all steps of the sequential evaluation process and Wirasnik has failed to establish error on this ground.

C.  <u>Consideration of Pain</u>

Wirasnik also asserts the ALJ erred in failing to consider the effect and magnitude of pain alone on his ability to work at substantial gainful activity levels.  (Doc. 9-1 at 6-7.)  "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979).

In determining whether a claimant's statements regarding pain are credible, once an underlying physical impairment that could reasonably be expected to produce pain has been shown, the ALJ must evaluate "the intensity, persistence, and limiting effects" of the pain to determine the extent to which it limits "the individual's ability to do basic work activities."  SSR 96-7P.  Where a claimant's statements "are not substantiated by objective medical evidence," the credibility finding must be based on "the entire case record."  <u>Id.</u>  In considering the other evidence in the record, an ALJ will consider factors such as a claimant's: (1) daily activities; (2) location, duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side-effects of any medication; (5) treatment, other than medication received; (6) any means used to relieve pain; and (7) other

factors concerning functional limitations.  20 C.F.R. § 404.1529(c)(3).

Here, the ALJ determined that while Wirasnik's medically determinable impairments could reasonably cause the pain alleged, his statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with his residual functional capacity for light work with a postural option.  (R. at 13.)  Wirasnik had testified he could not sit or stand for long periods, he was unable to lift, and he was in constant pain, which he scaled as a six out of ten, aggravated by weather.  Id.  He stated he took Trazadone at night, Tramadal in the morning, and over-the-counter medication.  Id.  He also stated he could stand for ten to fifteen minutes, could walk a quarter mile, but that twisting was difficult, and bending over was sometimes painful.  Id.

The ALJ noted the record contained evidence that contradicted claimant's assertion of incapacitating pain.  Id. at 13-14.  The ALJ noted that in 2006, Wirasnik's pain was relieved by treatment with a facet injection, and that he could do light-duty work without much difficulty.  Id. at 13.  In 2007, he did not require medication to drive round trip to and from North Carolina.  Id.  Also in 2007, Dr. Block noted claimant reported he could relieve his symptoms by moving around or stretching.  Id.  The ALJ noted that although Wirasnik testified at the

December 2009 hearing that he could walk only a quarter mile, in September 2009, he reported to Dr. Brown he was able to walk a mile.  Id.  The ALJ also noted the general activity level Wirasnik reported to Dr. Block is consistent with light activity, and that he worked part time at light duty.  (R. at 14.)  A reviewing court must uphold the decision of the Commissioner where it is supported by substantial evidence, even in instances where a reviewing court may come to a different conclusion.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

   The ALJ's credibility finding here is based on substantial evidence; therefore Wirasnik's assertion of error is unavailing.

   D.   Hypothetical Questions to Vocational Expert

   Wirasnik also asserts error because the ALJ's hypothetical questions for the vocational expert were premised on the assumption Wirasnik could do light work, rather than sedentary work to which Wirasnik claims he was limited, according to Dr. Block's October 2009 opinion.  (Doc. 9-1 at 5.)  The Commissioner argues Block's October 2009 opinion did not restrict Wirasnik to sedentary work, and even if it did, Wirasnik's argument supposes that the ALJ was required to assign controlling weight to Dr. Block's October 2009 opinion.  For reasons discussed supra, the ALJ's decision not to afford the October 2009 opinion controlling weight is supported by substantial evidence.  Any failure by the ALJ to ask hypothetical questions premised on Wirasnik's ability

to perform only sedentary work, therefore, does not amount to error.

III. CONCLUSION

For the foregoing reasons, Wirasnik's motion for an order reversing the Commissioner's decision (Doc. 9) is DENIED, and the Commissioner's motion for an order affirming the decision (Doc. 12) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 1st day of March, 2012.

/s/ J. Garvan Murtha<br>
Honorable J. Garvan Murtha<br>
United States District Judge